# In the United States Court of Federal Claims

**RUSSELL L. BACON**, *et al.*,

    *Plaintiffs,*

v.

**THE UNITED STATES,**

    *Defendant*.

No. 22-1724
(Filed: January 27, 2025)

*Meghan S. Largent, Lindsay S.C. Brinton, T. Hunter Brown*, Lewis Rice, LLC, St. Louis, Missouri, for Plaintiffs.

*Daniel Pinkston*, Senior Trial Attorney, Denver, Colorado, *Todd Kim*, Assistant Attorney General, Environment & Natural Resources Division, Washington, D.C., United States Department of Justice, for Defendant.

## OPINION AND ORDER

**HADJI**, *Judge*.

    Plaintiffs seek just compensation under the Fifth Amendment for the Government's alleged appropriation of their land for recreational trail use under the National Trail Systems Act, 16 U.S.C. §§ 1241-51 (Trails Act). *See generally* Third Am. Compl., ECF 19. The core dispute is whether Plaintiffs have a property interest in the disputed land. Plaintiffs allege that their predecessors in title, through certain "source deeds" dating from the late nineteenth and early twentieth centuries, granted the previous railroad operator easements across their property to build a railway corridor, and these easements terminated when the land ceased to be used for railroad purposes. Pls.' Mot. Summ. J. at 1-2, ECF 41. The Government argues that the source deeds relied on by Plaintiffs conveyed fee simple title to the original railroad operator such that Plaintiffs do not have any property interest in the land at issue. Def.'s Mem. at 2, ECF 45.

    Before the Court is Plaintiffs' Partial Motion for Summary Judgment (ECF 41) and the Government's Cross-Motion for Partial Summary Judgment (ECF 44). For the following reasons, Plaintiffs' Partial Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and the Government's Cross-Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This action is brought by several plaintiffs who own homes, farms, and businesses in Franklin County, Missouri. Third Am. Compl. ¶¶ 19-39; Pls.' Mot. Summ. J. at 1, ECF 41. The instant motion is brought by 16 of those plaintiffs.[1] The parties stipulate that Plaintiffs own various parcels of land adjacent to the railroad corridor at issue in this case, ECF 40 at 1, which is currently owned by V and S Railway, LLC (V&S). Pls. Ex. 1 at 2, ECF 19-1. Plaintiffs allege that their predecessors in title, through certain source deeds from approximately 120 years ago, granted the St. Louis, Kansas City & Colorado Railroad Co. (the Original Railroad) an easement across their property to build a railway corridor. Pls.' Mot. Summ. J. at 1-2, ECF 41.

In September 2022, V&S filed a petition with the Surface Transportation Board (STB), seeking exemption authority for the abandonment of a section of rail line between Union, Missouri and Beaufort, Missouri (the Corridor). Pls. Ex. 1 at 1, ECF 19-1. Pursuant to the Trails Act, 16 U.S.C. § 1247(d), the Missouri Department of Natural Resources requested issuance of a Notice of Interim Trail Use or Abandonment (NITU), so that it could negotiate with V&S for an interim trail use agreement pursuant to which the Corridor could be developed as a trail. Pls. Ex. 3, ECF 19-3. The STB issued a NITU on November 17, 2022, effective for one year, *Id.*, which was later extended twice through November 18, 2025. Pls. Ex. 4, ECF 41-4; ECF 47. Negotiations continue over a permanent trail use agreement. ECF 47; Pls.' Mot. Summ. J. at 3, ECF 41.[2]

The parties agree on the identification of the applicable source deeds. ECF 40. Specifically, the parties do not dispute that: (1) Plaintiffs owned property adjacent to the Corridor at the time of the NITU, and (2) those properties correspond to the tax parcel numbers and applicable source deeds listed below:

---

[1] The moving Plaintiffs are referred to simply as "Plaintiffs" and comprise: David and Diana Aguilar; Russell Bacon, Harry Duane and Anna L. Campbell; the Carol A. Eckstein Irrevocable Trust; DNZ Jeffriesburg, LLC; Barbara and Robert Differ; Dorothea Harrison; David and Elona Hoerr; Marquardt Brothers LLC; Kenneth and Diana Otzenberger; Judy and Dominick Rivara III; the Stanley and Gail Sleeman Trust; Voss Family Farm; Dean E. Whitworth; Michael Lottman; and Randal and Sonja Maciejewski. Plaintiffs' Motion addresses only those Plaintiffs' parcels where the parties dispute whether the source deed conveyed an easement or fee estate in the land.

[2] Despite the ongoing negotiations, the parties do not dispute that Plaintiffs' claims are ripe. It is well settled that a takings claim accrues upon the issuance of a NITU. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006). Accrual does not depend on the execution of a trail use agreement or the trail operator taking physical possession of the right-of-way. *Id.*

|     | Plaintiff(s) | Franklin County Parcel Number(s) | Source Deed Grantor Name (Book/Page) |
| --- | --- | --- | --- |
| 1.  | Russell Bacon | 23-1-02.0-000-007.000 | Siese (53/247) |
| 2.  | David and Diana Aguilar | 17-9-29.0-008-050.000 | A. Rapps (53/268) |
| 3.  | Harry Duane and Anna L. Campbell | 17-9-29.0-0-000-060.000 | A. Rapps (53/268) |
| 4.  | Carol A. Eckstein Irrevocable Trust | 23-1-01.0-0-000-016.000 | G. Rapps (53/284) |
| 5.  | DNZ Jeffriesburg, LLC | 16-7-25.0-0-000-026.000; 16-7-25.0-0-000-026.010 | Beckman (31/71) Erni (53/610) |
| 6.  | Barbara and Robert Duffer | 23-1-02.0-0-000-008.000; 23-1-02.0-0-002-029.000 | Siese (53/247) |
| 7.  | Dorothea Harrison | 17-9-30.1-0-000-022.300 | Erni (53/348) |
| 8.  | David and Elona Hoerr | 23-1-02.0-0-000-030.000; 23-1-02.0-0-002-027.000 | Siese (53/247) |
| 9.  | Marquart Brothers | 23.2.04.0-0-000-009.200 | Crowe (53/428) Crowe (30/498) |
| 10. | Kenneth and Diana Otzenberger | 23-2-03.0-002-017.400 | Koeln (53/314) |
| 11. | Judy and Dominick Rivara III | 17-9-29.0-0-006-050.300; 17-9-29.0-0-007-050.500 | A. Rapps (53/268) |
| 12. | Stanley and Gail Sleeman Trust | 23-2-03.0-0-002-017.300 | Koeln (53/314) |
| 13. | Voss Family Farm | 23-3-06.0-1-000-030.000 | Robertson (36/300) |
| 14. | Dean E. Whitworth | 17-9-30.2-0-000-015.000 | Fink (53/250) |
| 15. | Michael Lottman | 17-9-30.1-0-000-022.100 | Jonathan (58/507) |
| 16. | Randall and Sonja Maciejewski | 17-9-30.1-0-000 029.000 | Gilla (53/38) Erni (53/348) Jonathan (58/507) |

ECF 40.

Plaintiffs filed this action in November 2022, alleging that the NITU resulted in a taking of their property. ECF 1. Plaintiffs amended their complaint three times. ECF 4, ECF 9, ECF 19. Plaintiffs filed their Motion for Partial Summary Judgment in July 2024, seeking summary judgment on the threshold liability issues of whether, pursuant to the disputed source deeds, Plaintiffs have a reversionary interest in the land within the railroad right of way subject to the NITU, and if so, whether recreational trail use exceeds the scope

of the easements. ECF 41 at 8, 15. The Government filed its Motion for Partial Summary Judgment on September 12, 2024, opposing Plaintiffs' entitlement to summary judgment on these issues. ECF 44; ECF 45.

## LEGAL STANDARD

According to the Rules of the United States Court of Federal Claims, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).[3] "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

## DISCUSSION

To establish a Fifth Amendment taking, a plaintiff must possess a protectable property interest in the subject of the taking. *Palmyra Pac. Seafoods, L.L.C. v. United States,* 561 F.3d 1361, 1364 (Fed. Cir. 2009). In determining whether a landowner has met this requirement in Trails Act cases, the Court considers the following three factors:

> (1) who owned the strips of land involved, specifically did the Railroad … acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or

---

[3] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

> did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1533 (Fed. Cir. 1996).

Plaintiffs seek summary judgment as to the first two *Preseault II* factors, asking the Court to find as a matter of law that V&S obtained easements in the land at issue and that recreational trail use and railbanking exceed the scope of those easements. Pls.' Mot. Summ. J. at 21, ECF 41. For its part, the Government only disputes the first issue, stating: "If the Court holds that some or all of the interests conveyed through the source deeds were easements, Defendant, for the purposes of this case only, does not contest that interim trail use and railbanking are outside the scope of those easements." Def.'s Mem. at 34, ECF 45.

Thus, the sole issue before the Court is whether the Original Railroad, and subsequently V&S, obtained easements or fee simple title in the land subject to the NITU. To ascertain Plaintiffs' interest in the land at issue, the Court looks to the source deeds conveyed to the Original Railroad by Plaintiffs' predecessors in title. If the source deeds underlying the Plaintiffs' present ownership interests conveyed fee simple title to the Original Railroad, then Plaintiffs no longer own a property interest in the Corridor that could have been affected by the NITU. *See Preseault II*, 100 F.3d at 1533.

Three of the relevant deeds were recently addressed by the undersigned in *Henley v. United States,* No. 22-1716, 2024 WL 4719154 (Fed. Cl. Nov. 7, 2024). There, the Court determined that the Siese and Fink deeds conveyed fee simple title, while the contested Crowe source deed conveyed only an easement for railroad purposes.[4] *Id.* at *6-7. Having carefully considered Plaintiffs' amicus briefing in *Henley* and their briefing here, the Court sees no reason to depart from its previous treatment of those deeds. Nevertheless, the Court will explain its rationale here as well for clarity.

Turning to the case at hand, the deeds at issue in this case can be grouped into two categories: (1) deeds containing a reference to "right of way" (Erni, A. Rapps, G. Rapps, Siese, Koeln, Fink, and Jonathan); and (2) deeds that were conveyed for nominal amounts (Crowe, Beckmann, and Robertson).

**I.    Group One: The Erni, A. Rapps, G. Rapps, Siese, Koeln, Fink, and Jonathan Source Deeds**

Each deed in the first group contains language of a "right of way" or "right-of-way." The key question is whether this language limits each conveyance to an easement. The

---

[4] The parties seemingly agree that the Crowe (53/428) source deed conveyed an easement, though they incorrectly refer to it as the Crowe (30/428) deed. ECF 40 at 3.

5

Siese source deed is illustrative of this group and conveys to the Original Railroad the following:

> A strip of land over one hundred (100) feet in width, having a uniform width of fifty (50) feet on each side of the center line of the Railroad of said corporation, as the parcel is now located, described and marked out on and across the following described tracts and parcels of land to wit: The west half (1/2) of Lot One (1) of the Northeast quarter (1/4) and the East half of Lot One (1) of the Northwest quarter (1/4) Southeast quarter (1/4) of Southwest quarter (1/4) and the West half (1/2) of the Southwest quarter (1/4) all of section two (2) Township Forty Two (42) North range Two (2) West. Also an additional strip of land twenty five (25) feet wide on each side of the above described Right-of-way, and adjacent and parallel thereto, to be unsecured from a point where said located line crosses the south side of the Jaques Prairie Road. Thence in a southwesterly direction, a distance of 1000 feet. Also another additional strip of land twenty five (25) feet on each side of said located line and adjacent and parallel thereto . . . .

Pls. Ex. 10a, ECF 41-16. The other deeds in this group are similar. Pls. Ex. 8a, ECF 41-12 (A. Rapps); Pls. Ex. 9a, ECF 41-14 (G. Rapps); Pls. Ex. 11a, ECF 41-18 (Erni); Pls. Ex. 12a, ECF 41-20 (Koeln); Pls. Ex. 13a, ECF 41-22 (Fink); Pls. Ex. 14a, ECF 41-24 (Jonathan). Each deed, except the Jonathan deed, includes a primary conveyance of a strip of land centered on the railroad line and a secondary conveyance of additional strips of land on either side of the primary conveyance. The Jonathan deed contains only a primary conveyance. Pls. Ex. 14a, ECF 41-24. Further, each source deed includes a broad habendum clause conveying the estate "[t]o Have And To Hold the same[,] together with all the rights, immunities, privileges and appurtenances to the same belonging" unto the grantee "and to its successors and assigns forever." *See, e.g.*, Pls. Ex. 10a, ECF 41-16. Finally, each deed recites significant consideration for the time (approximately 120 years ago): $50 was paid for the Erni deed, $375 for Siese, $350 for Fink, $440 for A. Rapps, $175 for G. Rapps, $100 for Koeln, and $50 for Jonathan.[5]

To aid its interpretation of these deeds, the Court applies the law of the state in which the property is located. *See Preseault II*, 100 F.3d at 1540. Because the rail line at issue is in Missouri, the Court applies Missouri law. *Id.* Under Missouri law, the cardinal method for deed interpretation is "to ascertain the intention of the parties and to give that

---

[5] Adjusting for inflation based on the Consumer Price Index from 1913, the earliest year such data is available, these amounts approximately equal: $1,610 for the Erni deed, $12,076 for Siese, $11,271 for Fink, $14,170 for A. Rapps, $5,635 for G. Rapps, $3,220 for Koeln, and $1,610 for Jonathan. *See* https://data.bls.gov/cgi-bin/cpicalc.pl (last visited Jan. 15, 2024).

intention effect." *Hinshaw v. M-C-M Props., LLC*, 450 S.W.3d 823, 827 (Mo. Ct. App. 2014). The courts of Missouri have consistently reviewed the following three factors to determine whether a deed to a railroad passes fee title or merely an easement: (1) whether the deed includes language conveying a "right of way;" (2) the amount of consideration; and (3) language in the deed limiting the use of the land for railroad purposes. *Moore v. Mo. Friends of Wabash Trace Nature Trail, Inc.* (*Danny Moore*), 991 S.W.2d 681, 685-86 (Mo. Ct. App. 1999).

Here, the parties do not dispute that the last two factors favor a fee simple conveyance. Each deed recites significant consideration for the time and contains no express language limiting the use of the land for railroad purposes. Nevertheless, Plaintiffs argue that the first factor—the inclusion of "right of way" language—is sufficient to limit the interest conveyed. Pls.' Mot. Summ. J. at 14, ECF 41.

Under Missouri law, "right of way" language may indicate that the grantor intended to convey a right of passage rather than fee simple absolute. *See City of Columbia v. Baurichter*, 729 S.W.2d 475, 479 (Mo. Ct. App. 1987). However, Missouri courts do not automatically construe "right of way" language to effect a limitation on a deed. *Schuermann Enter., Inc. v. St. Louis*, 436 S.W.2d 666, 669 (Mo. 1969). According to the Missouri Supreme Court, the phrase "right of way" has "been accorded two meanings in railroad parlance—the strip of land upon which the tract is laid—and the legal right to use such strip." *Id.* "[W]here the interest conveyed is limited to right of way or for right of way the estate conveyed is an easement only." *Id.*

Based on this distinction, the Court finds that the deeds in this section can be further divided into two groups. The deeds in the first group (Group A) employ "right of way" language merely in a descriptive sense with respect to locating the primary and secondary conveyances in relation to one another or the center line of the railroad. The deeds in the second group (Group B) use more purpose-oriented "right of way" language suggesting that the interest conveyed is in fact "for" right of way. The chart below illustrates the two groups and the operative "right of way" language:

| Source Deed | Exhibit No. | Group | Exemplar Excerpt |
|---|---|---|---|
| A. Rapps (53/368) | 8a | A | |
| Siese (53/247) | 10a | A | "Also an additional strip of land twenty-five (25) feet wide on each side of the above described Right-of-way…." (C. Siese) |
| Fink (53/250) | 13a | A | |
| Jonathan (58/507) | 14a | A | "[T]wo strips of land each fifty feet wide, having a uniform width of fifty (50) feet on each side of the |

7

|  |  |  | right-of-way of the railroad… being parallel with and adjacent to said right of way….” |
|---|---|---|---|
| G. Rapps (53/284) | 9a | B | "[A]nd also an additional strip of land for right of way, of fifty (50) feet in width on each side of, and adjacent to the above described right of way, and extending from the North line of said Lot Two (2) above described….” |
| Erni (53/348) | 11a | B | "And also the additional strip of land for right of way described as follows, to wit: A strip of land fifty (50) feet in width on each side of and adjacent to the above described right of way….” |
| Koeln (53/314) | 12a | B | "[A]nd also, the following described additional strips of land for extra right of way as followed to wit: A strip land on each side of and adjacent to, the foregoing described right of way….” |

Regarding Group A, it does not appear that the use of "right of way" language was intended to limit the nature of the interest conveyed. In the Siese deed, for example, the phrase "right of way" is wholly absent from the granting clause of the primary conveyance—which is described in fee simple terms as a "strip of land over one hundred (100) feet in width." Pls. Ex. 10a, ECF 41-16. Instead, the phrase appears alongside the granting clause of the secondary conveyance and only in the context of locating the position of the secondary conveyance in relation to the primary conveyance. *Id.* The A. Rapps, Fink, and Jonathan deeds similarly only reference the railroad's right of way in the context of positioning the parcel. For each deed, the phrase "right of way" is used merely as a description of the location of the land conveyed and, therefore, is not indicative of an easement or any other limitation on the conveyances.

The Court's decision in *Hubbert v. United States*, 58 Fed. Cl. 613 (2003) (Bruggink, J.), supports this conclusion. *Hubbert* construed a source deed under Missouri law which recited consideration of seventy-five dollars. *Id.* at 615. The deed in question included language stating that the grantor was conveying "[a] strip of Land One hundred feet wide over and through the [described section] said strip of Land being fifty feet on each side of the center line of the Springfield and Northern Railway as the same is now Located and partly constructed over and through said land, the same being the right of way for said [Railroad]." *Id.* The Court found that the deed conveyed a fee simple interest to the railroad:

> The use of the "right of way" language in the deed is simply descriptive and not intended to limit the interest conveyed. The Missouri Supreme Court has recognized that the phrase "right of way" has "been accorded two meanings in railroad parlance – the strip of land upon which the tract [is] laid – and the legal

8

> right to use such strip." *Schuermann Enter., Inc. v. St. Louis*, 436 S.W.2d 666, 669 (Mo.1969).
>
> The right-of-way language here appears at the end of the body of the document, textually removed from the granting clauses. The granting clauses themselves express the conveyance of "lots, tracts or parcels of Land" and "a strip of land." The location of the "right of way" language therefore describes the location of the strip of land and is not a limitation on the interest conveyed.

*Id.* at 615-16.

The deeds in Group A warrant the same treatment. For each deed in Group A, the primary conveyance expresses the conveyance in fee simple terms such as a "strip of land one hundred (100) feet in width," while the placement of the "right of way" language seemingly describes the location of the strip of land. Indeed, in the Siese and Fink deeds, the "right of way" language is entirely removed textually from the primary conveyance. Under these circumstances, the use of "right of way" does not indicate an intention to convey an easement, and any faint signal to that effect is more than drowned out by the abundance of fee simple language both before ("grant, bargain and sell") and after ("To Have and to Hold the same…"). *See Nixon v. Franklin*, 289 S.W.2d 82, 88 (Mo. 1956) (holding that the words "grant, bargain and sell" are evidence of a conveyance in fee simple); *Bayless v. Gonz*, 684 S.W.2d 512, 513 (Mo. Ct. App. 1984) (holding that language stating "to have and to hold the same together with all singular rights, immunities, privileges and appurtenances to the same" conveys a fee simple interest).

Resisting this reasoning, Plaintiffs ask this Court to disregard *Hubbert* and instead follow *Abbott v. United States*, 162 Fed. Cl. 445 (2022) (Davis, J.). Pls.' Mot. Summ. J. at 15, ECF 41. In *Abbott*, the Court interpreted deeds with similar primary and secondary conveyances to those at issue here and found that they conveyed easements under Missouri law. The Court summarized those deeds as follows:

> [E]ach representative deed contains a primary conveyance of a strip of land 100 feet in width, and a secondary conveyance for a 25-foot-wide strip of land on each side of and running parallel to the land described in the primary conveyance. ECF No. 162-2 at 21, 24, 27. Each of the secondary conveyances is "for extra right of way," followed by a description of its location. *Id.* (emphasis added). The antecedent "for" clearly indicates that "right of way" limits the interest acquired in the secondary conveyance, and is not merely a description of the land conveyed or its location. This language is sufficient to show that the deeds' secondary conveyances transferred an easement

> under Missouri law. *See G.M. Morris*, 631 S.W.2d at 88 (citing *Schuermann*, 436 S.W.2d at 669).

*Abbott*, 162 Fed. Cl. at 461. However, those deeds differ from the ones presently at issue. In interpreting the *Abbott* deeds, the Court placed particular emphasis on the word "for" preceding the "right of way" language in each deed. *Id.* This makes sense because the word "for" is used as a function word to indicate purpose. *For*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). By contrast, none of the deeds in Group A specify that the primary or secondary conveyances are "for" right of way. *See, e.g.*, Pls. Ex. 8a, ECF 41-12. Rather, each Group A deed, with the exception of the Jonathan deed, refers to the primary conveyance as the "above described right of way" in the context of locating the position of the secondary conveyance relative to the primary one. *Id.* Likewise, the reference to "right of way" in the primary conveyance of the A. Rapps deed appears only in the context of locating the position of the primary conveyance to the center line of the railroad. *Id.*

The Jonathan deed is slightly different as it contains only a primary conveyance. That deed conveyed the following to the Original Railroad:

> Two strips of land each fifty feet wide, having a uniform width of fifty (50) feet on each side of the right-of-way of the railroad of said Company, and Nine Hundred and Seventy Five feet long, Each strip being parallel with and adjacent to said right of way as the same is now located and constructed over upon and across the following described tract of land, to wit: all that part of the South West quarter of the North East quarter section 30 Township 43 Range One West, which lies west of a line drawn North and South through said right of way at a distance of 400 feet west of point of intersection of the East line of said quarter section with the center line of said right of way.

Pls. Ex. 12a, ECF 41-24. Like the A. Rapps deed, "right of way" language appears in the Jonathan deed within the granting clause of the primary conveyance. Nevertheless, the Court concludes that the references to "right of way" in the Jonathan deed do not refer to either the location or purpose of the primary conveyance itself but to land that is "parallel with and adjacent" to the primary conveyance. That land, which is described as part of the South West quarter of the North East quarter section 30 Township 43 Range One West, appears to be the secondary conveyance in the Erni deed, which this Court addresses below.

Regarding Group B, the analysis runs the other way. The Koeln deed states that the secondary conveyance is "for *extra* right of way." Pls. Ex. 12a, ECF 41-20 (emphasis added). Not only does the predicate "for" limit the secondary conveyance to that of right of way only, but the term "extra" indicates that the primary conveyance is "for" right of way as well. Accordingly, both the primary and secondary conveyances in the Koeln deed are limited to an easement only. Analysis of the G. Rapps and Erni deeds are a bit more

nuanced. Although they describe the secondary conveyance as "for right of way" they do not include the instructive "extra" to suggest that the relevant primary conveyances are "for" right of way as well. In this regard, the G. Rapps and Erni deeds are similar to the deeds in Group A with respect to their primary conveyances. The G. Rapps and Erni deeds refer to the relevant primary conveyance only as the "above described right of way." *See* Pls. Ex. 9a, ECF 41-14; Pls. Ex. 11a, ECF 41-18. Accordingly, the Court concludes that the G. Rapps and Erni deeds convey an easement only with respect to the secondary conveyance in each deed.

The Court's nuance here is merely the result of applying *Schuermann*, which contemplates that there must be some category of deeds where the use of "right of way" language does *not* transform the conveyance into an easement and the Court believes that the A. Rapps, Siese, Fink, and Jonathan source deeds not only fit into this category but exemplify it. For those deeds, the phrase "right of way" is used merely as a description of the location of the land conveyed and, therefore, is not indicative of an easement or any other limitation on the conveyances.

In sum, the A. Rapps, Siese, Fink, and Jonathan deeds contain all the indications of a fee simple conveyance. These deeds all recite significant consideration for the time, contain no language limiting the use of the land for railroad purposes, and employ the phrase "right of way" merely as a location descriptor. *Danny Moore*, 991 S.W.2d at 685-86. The Court concludes that these deeds conveyed fee simple title to the Original Railroad and, therefore, Plaintiffs fail the first prong of *Preseault* with respect to these deeds. Accordingly, the claims of Plaintiffs Russell Bacon, David and Diana Aguilar, Harry Duane and Anna L. Campbell, Judy and Dominick Rivara III, Barbara and Robert Duffer, David and Elona Hoerr, Dean E. Whitworth, and Michael Lottman are dismissed.[6] The portion of the claim of Randall and Sonja Maciejewski underlain by the Jonathan deed (58/507) is also dismissed. The Court grants the Government's Motion for Partial Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment as to these claims.

The Court concludes as a matter of law that the Koeln deed, as well as the secondary conveyances in the Erni and G. Rapps deeds, conveyed easements to the Original Railroad, which terminated when the Corridor ceased to be used for railroad purposes. The Court thus grants Plaintiffs' Motion for Partial Summary Judgment and denies the Government's Motion for Partial Summary Judgment as to the claims based on the Koeln deed as well as the secondary conveyances in the Erni and G. Rapps deeds. Having found that the primary conveyances in the Erni and G. Rapps deeds conveyed fee simple interests, the portions of

---

[6] According to the parties' Joint Stipulations, ECF 40, the claim of Michael Lottman is underlain solely by the Jonathan deed (58/507). Nevertheless, Plaintiffs contend at one point in their briefings that "the source deed for the Lottman property is the J. Erni 53/348 deed for the main corridor and the [Jonathan] 58/507 deed for the additional width outside the main corridor." ECF 46 at 13 n.10. The Court prioritizes the representations in the Joint Stipulations, ECF 40, as that document was entered into and signed by all parties. Because the Lottman claim is underlain solely by the Jonathan deed (58/507), which conveyed fee simple title to the Original Railroad, the Lottman claim is dismissed.

the claims of Dorothea Harrison and Randall and Sonja Maciejewski underlain by the primary conveyance in the Erni deed (53/348) are dismissed. The portion of the claim of the Carol A. Eckstein Irrevocable Trust underlain by the primary conveyance in the G. Rapps deed (53/284) is also dismissed. The Court grants the Government's Motion for Partial Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment as to these portions of these claims.

## II.     Group Two: The Crowe, Beckman, and Robertson Source Deeds

The Court turns to the second group of deeds—the Crowe, Beckman, and Robertson source deeds—which underlie the Marquardt Brothers claim (Crowe), the DNZ Jeffriesburg, LLC claim (Beckman), and the Voss Family Farms claim (Robertson). Unlike the first group, these deeds do not contain any "right of way" language. Rather, the pivotal characteristic of these deeds is that they were each conveyed for consideration of "one dollar and the building, maintaining, and operating of a Railroad." Pls. Ex. 5a, ECF 41-6; Pls. Ex. 6a, ECF 41-8; Pls. Ex. 7a, ECF 41-10. Plaintiffs argue that the apparent lack of valuable consideration renders each conveyance a voluntary grant (and therefore an easement) under Missouri law. Pls.' Mot. Summ. J. at 9-11, ECF 41. The Government argues that the added condition of "building, maintaining, and operating of a railroad" constitutes valuable, non-monetary consideration under Missouri law sufficient to convey fee simple title. Def.'s Mem. at 30-32, ECF 45.

Mo. Rev. Stat. § 388.210(2) (2022), whose predecessor was in effect when the deeds in question were created,[7] gives railroad companies the ability to take and hold voluntary grants. Specifically, the statute provides that railroads may:

> [T]ake and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only[.]

"The term 'voluntary' grant has been construed to mean a conveyance without valuable consideration." *Danny Moore*, 991 S.W.2d at 685. A sum of one dollar is considered nominal consideration, not valuable consideration, under the law of conveyancing. *Brown v. Weare*, 152 S.W.2d 649, 653 (1941). The exchange of mere nominal consideration, even if paired with unconditional language indicative of a fee simple conveyance, results only in a voluntary grant to the railroad. *See, e.g*, *G.M. Morris Boat Co., Inc. v. Bishop*, 631 S.W.2d 84, 88 (Mo. Ct. App. 1982); *Moore v. United States*, 58 Fed. Cl. 134, 136-37 (2003). If the conveyance to the railroad is determined to be a voluntary grant, "the effect of the statute [is] that the railroad acquired only an easement, no matter what interest the deed purported to convey." *Danny Moore*, 991 S.W.2d at 685.

---

[7] Mo. Rev. Stat. § 1035 (1899).

As the Government points out, valuable consideration may be non-monetary in nature. Def.'s Mem. at 9, ECF 45. For example, in *Bagby v. Missouri-Kansas-Texas R. Co.*, the Missouri Supreme Court found valuable consideration where land was conveyed to a railroad on the condition that the railroad build its car and coach shops there. 171 S.W.2d 673, 676 (Mo. 1943). The Court also recognized as valuable consideration "benefits accruing to property owners from the location of public buildings, military headquarters, or manufacturing plants or other private buildings." *Id*.

However, no Missouri court has found valuable consideration where land was conveyed, as here, for the consideration of one dollar and "the building, maintaining, and operating of a railroad." In fact, the only Missouri court to directly address the question held the opposite. In *Danny Moore*, the Missouri Court of Appeals, Western District, found that a deed stating consideration of "one dollar and the building[,] maintaining[,] and operating of a railroad by the [railroad], its successors and assigns" amounted to "merely nominal" consideration. 991 S.W.2d at 687.

This Court recently applied *Danny Moore* in its decision in *Abbott*, 162 Fed. Cl. at 461. Based on the clear holding in *Danny Moore*, Mo. Rev. Stat. § 388.210(2), along with the "absence of any conflicting, on-point Missouri case law," this Court concluded that "'one dollar and the building, maintaining, and operating of a railroad' does not constitute valuable consideration" under Missouri law. *Abbott*, 162 Fed. Cl. at 461 (citing *Danny Moore*, 991 S.W.2d at 685).

This Court explained its reasoning in *Abbott* in two additional ways, which are applicable here as well. First, unlike the construction of a building such as a shop or depot, the mere construction and operation of a railroad right of way does not confer any clear tangible benefits to nearby property owners. *Id.* at 460. In this regard, *Bagby* is not on point as this Court explained in *Abbott*. *Id.* "The conveyance at issue there was part of an arrangement between a city in Missouri and a railroad company" and "[t]he city enticed the railroad to locate its car and coach shops in its town by subsidizing the building of railway company shops with $100,000." *Id.* (citing *Bagby*, 171 S.W.2d at 674). The benefits to the city were readily apparent in the form of "employment opportunities for local citizens resulting from the building and operating" of the shops. *Id.* (citing *Bagby*, 171 S.W.2d at 676). This Court concluded that "[w]hile the community benefits in *Bagby* are apparent, it is less obvious what tangible benefits are conferred upon an individual landowner … by a railroad right of way running across his/her land … nor does Defendant make such a showing." *Id.*

Second, construing the "building, maintaining, and operating of a railroad" as valuable consideration would essentially render Mo. Rev. Stat. § 388.210(2) all but useless. As discussed, that statute gives railroads the authority to accept voluntary grants of land (*i.e.*, easements) "to aid in the construction, maintenance and accommodation of its railroads." Mo. Rev. Stat. § 388.210(2). The fact "[t]hat the parties clearly shared an intent that the Railroad use the land to build, maintain, and operate (*i.e.*, construct, maintain, and accommodate) the rail line is what, in part, makes it an easement by operation of law."

13

*Abbott*, 162 Fed. Cl. at 460. By contrast, the Government proposes a scheme where the very act of building, maintaining, and operating the rail line would constitute valuable consideration to the property owners and thus convert the voluntary grant into a fee simple conveyance. Such a scheme would be wholly antithetical to the operation of voluntary grants under Section 388.210(2).

Consistent with *Abbott*, which is directly supported by Missouri law, the Court finds that the Original Railroad conveyed only nominal consideration to Plaintiffs' predecessors. And, because Missouri law holds that conveyances to railroads for nominal consideration are voluntary grants (and therefore easements), *Danny Moore*, 991 S.W.2d at 685-86, the Court concludes as a matter of law that the Crowe, Beckman, and Robertson source deeds conveyed easements to the Original Railroad, which terminated when the Corridor ceased to be used for railroad purposes. The Court grants Plaintiffs' Motion for Partial Summary Judgment and denies the Government's Motion for Partial Summary Judgment as to the claims based on those deeds.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Partial Motion for Summary Judgment (ECF 41) is **GRANTED IN PART** and **DENIED IN PART,** and the Government's Partial Motion for Summary Judgment (ECF 44) is **GRANTED IN PART** and **DENIED IN PART**. The claims of Plaintiffs Russell Bacon, David and Diana Aguilar, Harry Duane and Anna L. Campbell, Judy and Dominick Rivara III, Barbara and Robert Duffer, David and Elona Hoerr, Dean E. Whitworth, and Michael Lottman are **DISMISSED**. The following claims are also dismissed: (1) the portion of the claim of Randall and Sonja Maciejewski underlain by the Jonathan deed (58/507) and the primary conveyance in the Erni deed (53/348); (2) the portion of the claim of Dorothea Harrison underlain by the primary conveyance in the Erni deed (53/348); and (3) the portion of the claim of the Carol A. Eckstein Irrevocable Trust underlain by the primary conveyance in the G. Rapps deed (53/284). The parties **SHALL** submit a joint status report on or before February 26, 2025, including a proposal for further proceedings.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge